UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNETH R. STADT,<br><br>                    Plaintiff,<br><br>vs.<br><br>FOX NEWS NETWORK LLC,<br><br>                    Defendant. | Civil Case No. 09-cv-07910-DC<br><br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT FOX NEWS NETWORK, L.L.C.'S
MOTION TO DISMISS**

Lee Levine
Christopher P. Beall
Amanda M. Leith
**LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.**
321 West 44th Street, Suite 510
New York, NY 10036
(212) 850-6100

*Attorneys for Defendant*
*Fox News Network, L.L.C.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL BACKGROUND........................... 2

PLAINTIFF'S STATE-LAW CAUSES OF ACTION ARE BOTH PREEMPTED BY
 THE COPYRIGHT ACT AND FAIL TO STATE A CLAIM ............................... 4

A. STADT'S BREACH OF CONTRACT CLAIM SHOULD BE
 DISMISSED ............................................................................................. 5

  1. The Copyright Act's Broad Preemptive Scope........................... 5

  2. Stadt's Breach of Contract Claim Is Preempted ....................... 6

  3. The Cases Upon Which Plaintiff Relies Do Not Compel A
   Different Conclusion................................................................ 10

B. STADT'S REMAINING STATE-LAW CLAIMS SIMILARLY
 SHOULD BE DISMISSED ......................................................................... 14

  1. Stadt Fails to State a Claim for Conversion........................... 14

  2. Stadt Cannot State A Claim for Breach of Fiduciary Duty ................. 16

  3. Plaintiff's Claim for Unfair Competition is Both Preempted and
   Fails to State a Claim ............................................................. 17

  4. Plaintiff's Claim for Unjust Enrichment is Preempted ......................... 20

  5. Stadt Fails to State a Claim for Misappropriation of "Hot" News ......... 21

CONCLUSION.................................................................................................. 23

## TABLE OF AUTHORITIES

### CASES

*American Movie Classics Co. v. Turner Entertainment Co.*,
    922 F. Supp. 928 (S.D.N.Y. 1996) ...................................................................7, 8

*Acorn Structures, Inc. v. Swantz*,
    846 F.2d 923 (4th Cir. 1988) .............................................................................13

*In re Adirondack Railway Corp.*,
    Nos. 89-cv-1489, 90-cv-0050, 1990 WL 124225 (N.D.N.Y. Aug. 23, 1990) .......................9

*Architectronics, Inc. v. Control System*, *Inc.*
    935 F. Supp. 425 (S.D.N.Y. 1996) ..............................................................10, 11

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)........................................................................................4

*Atlantis Information Technology, GmbH v. CA, Inc.*,
    485 F. Supp. 2d 224 (E.D.N.Y. 2007) .........................................................16, 17

*Atrium Group de Ediciones y Publicaciones, S.L. v. Harry N. Abrams, Inc.*,
    565 F. Supp. 2d 505 (S.D.N.Y. 2008).................................................................20

*Azby Brokerage, Inc. v. Allstate Insurance Co.*,
    681 F. Supp. 1084 (S.D.N.Y. 1988)....................................................................19

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007)........................................................................................4

*Bonito Boats Inc. v. Thunder Craft Boats, Inc.*,
    489 U.S. 141 (1989)............................................................................................5

*Boyle v. Stephens, Inc.*,
    No. 97 Civ. 1351, 1998 WL 690816 (S.D.N.Y. Sept. 29, 1998), *aff'd*, 21 F. App'x
    76 (2d Cir. 2001)...............................................................................................20

*Briarpatch Ltd. v. Geisler Roberdeau, Inc.*,
    148 F. Supp. 2d 321 (S.D.N.Y. 2001)...............................................................15

*Briarpatch Ltd. v. Phoenix Pictures, Inc.*,
    373 F.3d 296 (2d Cir. 2004)......................................................5, 6, 9 , 11, 20

*Brignoli v. Balch Hardy & Scheinman, Inc.*,
    645 F. Supp. 1201 (S.D.N.Y. 1986)....................................................................7

*Broadvision Inc. v. General Electric Co.*,
    No. 08 Civ. 1489, 2008 WL 4684114 (S.D.N.Y. Oct. 15, 2008) ..........................6, 8, 11, 12

*Brooks v. Key Trust Co. National Association*,
    26 A.D.3d 628 (3d Dep't 2006)...................................................................................17, 18

*CBS Broadcasting Inc. v. Counterr Group*,
    No. 05 Civ. 7946 (S.D.N.Y. Aug. 26, 2008) ..................................................................8, 12

*Calcutti v. SBU., Inc.*,
    223 F. Supp. 2d 517 (S.D.N.Y. 2002).........................................................................14, 15

*Community for Creative Non-Violence v. Reid*,
    490 U.S. 730 (1989).......................................................................................................5

*Computer Associates International, Inc. v. Altai, Inc.*,
    982 F.2d 693 (2d Cir. 1992)...........................................................................................6

*Cooper v. Sony Records International*,
    No. 00 Civ. 233, 2001 WL 1223492 (S.D.N.Y. Oct. 15, 2001) ...................................8, 9, 12

*DeCarlo v. Archie Comic Publications, Inc.*,
    127 F. Supp. 2d 497 (S.D.N.Y.), *aff'd*, 11 F. App'x 26 (2d Cir. 2001)..................................7

*Elliott v. Qwest Communications Corp.*,
    25 A.D.3d 897 (3d Dep't 2006) ...................................................................................16

*eScholar, LLC v. Otis Educational System, Inc.*,
    387 F. Supp. 2d 329 (S.D.N.Y. 2005)..........................................................................10, 11

*Escoe v. Zerbst*,
    295 U.S. 490 (1935)....................................................................................................9, 10

*Faulkner v. Arista Records*,
    602 F. Supp. 2d 470 (S.D.N.Y. 2009)....................................................................3, 4, 16, 17

*Fesseha v. TD Waterhouse Investor Services, Inc.*,
    305 A.D.2d 268 (1st Dep't 2003) ...............................................................................15, 17

*Financial Information, Inc. v. Moody's Investors Service, Inc.*,
    808 F.2d 204 (2d Cir. 1986).......................................................................................21, 22

*Freeplay Music, Inc. v. Cox Radio, Inc.*,
    409 F. Supp. 2d 259 (S.D.N.Y. 2005)..............................................................................18

*Gucci America, Inc. v. Duty Free Apparel, Ltd.*,
   277 F. Supp. 2d 269 (S.D.N.Y. 2003)................................................................18, 19, 20

*GuideOne Specialty Mutual Insurance Co. v. Congregation Bais Yisroel*,
   381 F. Supp. 2d 267 (S.D.N.Y. 2005)....................................................................19

*Gusler v. Fischer*,
   580 F. Supp. 2d 309 (S.D.N.Y. 2008).............................................................6, 7, 20

*Holloway v. King*,
   361 F. Supp. 2d 351 (S.D.N.Y. 2005), *aff'd*, 161 F. App'x 122 (2d Cir. 2005).............16, 17

*Hudson v. Universal Pictures Corp.*,
   70 U.S.P.Q. 2d 1727, 2004 WL 1205762 (E.D.N.Y. Apr. 29, 2004), *aff'd sub nom.*
   *Hudson v. Imagine Entertainment Corp.*, 128 F. App'x. 178, 179 (2d Cir. 2005)................18

*International News Service v. Associated Press*,
   248 U.S. 235 (1918)........................................................................................21

*Kopel v. Bandwidth Technology Corp.*,
   56 A.D.3d 320, 320 (1st Dep't 2008) ...................................................................16

*Kregos v. Associated Press*,
   3 F.3d 656 (2d Cir. 1993).................................................................................18

*Lennon v. Seaman*,
   63 F. Supp. 2d 428 (S.D.N.Y. 1999)................................................................13, 20

*Lipscher v. LRP Publications, Inc.*,
   266 F.3d 1305 (11th Cir. 2001) .........................................................................13

*Logicom Inclusive, Inc. v. W.P. Stewart & Co.*,
   No. 04 Civ. 0604, 2004 WL 1781009 (S.D.N.Y. Aug. 10, 2004) ..................................7

*Maurizio v. Goldsmith*,
   230 F.3d 518 (2d. Cir. 2000).............................................................................18

*National Basketball Association v. Motorola, Inc.*,
   105 F.3d 841 (2d Cir. 1997)....................................................................6, 11, 21, 22

*National Car Rental System, Inc. v. Computer Associates International, Inc.*,
   991 F.2d 426 (8th Cir. 1993) ........................................................................12, 13

*Orange County Choppers, Inc. v. Olaes Enterprises, Inc.*,
   497 F. Supp. 2d 541 (S.D.N.Y. 2007)..................................................................13

*Oursler v. Women's Interart Center, Inc.*,
170 A.D.2d 407 (1st Dep't 1991) ...............................................................16

*Price v. Fox Entertainment Group, Inc.*,
473 F. Supp. 2d 446 .............................................................................7, 12, 15

*ProCD, Inc. v. Zeidenberg*,
86 F.3d 1447 (7th Cir.1996) ....................................................................13

*Richie v. Williams*,
395 F.3d 283 (6th Cir. 2005) ...................................................................13

*Schwartz v. Capital Liquidators, Inc.*,
984 F.2d 53 (2d Cir. 1993)...................................................................14, 15

*Sharp v. Patterson*,
No. 03 Civ. 8772, 2004 WL 2480426 (S.D.N.Y. Nov. 3, 2004)  ...................................7, 14

*Silverstein v. Penguin Putnam, Inc.*,
522 F. Supp. 2d 579 (S.D.N.Y. 2007)...................................................................18

*Smith v. Weinstein*,
578 F. Supp. 1297 (S.D.N.Y.), *aff'd*, 738 F.2d 419 (2d Cir. 1984) ........................................7

*Tannenbaum v. Corbis Sygma*,
No. 02 Civ. 5066, 2002 WL 31778813 (S.D.N.Y. Dec. 12, 2002)........................................7

*Taquino v. Teledyne Monarch Rubber*,
893 F.2d 1488 (5th Cir. 1990) ....................................................................13

*Teller v. Bill Hayes, Ltd.*
213 A.D.2d 141 (2d Dep't 1995)...................................................................19

*Torah Soft Ltd v. Drosnin*,
224 F. Supp. 2d 704 (S.D.N.Y. 2002)...................................................................8

*Warner Bros., Inc. v. American Broadcast Cos.*,
720 F.2d 231 (2d Cir. 1983) ....................................................................21

*Willis v. Home Box Office*,
57 F. App'x. 902 (2d Cir. 2003) ...................................................................13

*Winner International v. Kryptonite Corp.*,
No. 95 Civ. 247, 1996 WL 84476 (S.D.N.Y. Feb. 27, 1996) ................................................19

*Wolff v. Institute of Electrical & Electronics Engineers, Inc.*,
    768 F. Supp. 66 (S.D.N.Y. 1991) ......................................................................7

*Wrench LLC v. Taco Bell Corp.*,
    256 F.3d 446 (6th Cir. 2001) ......................................................................12

## STATUTES & OTHER AUTHORITY

17 U.S.C. § 102(a)(6) ......................................................................................9

17 U.S.C. § 301 ......................................................................................4, 5

1 David Nimmer, *Nimmer on Copyright* § 1.01(B)(1) ...........................................12, 20

## PRELIMINARY STATEMENT

This case arises from a dispute over certain video footage depicting convicted Ponzi-scheme operator Bernie Madoff ("the Madoff Video"). Plaintiff Kenneth R. Stadt has brought this action against Fox News Network, L.L.C. ("Fox") based on allegations that Fox used videotape footage in which Stadt claims to own the copyright without his authorization. Stadt contends that he is the owner of the copyright in the video compilation, that he exclusively licensed it to Fox for its use until April 30, 2009, and that Fox used the video, or portions of it, subsequent to the expiration of the parties' license agreement. On that basis, Stadt initially filed a Complaint in this Court alleging causes of action for copyright infringement and breach of contract. After Fox indicated its intent to move to dismiss the breach of contract claim on the ground that it was preempted by the Copyright Act, Stadt filed an Amended Complaint, adding five additional causes of action for conversion, breach of fiduciary duty, unfair and deceptive trade practices, unjust enrichment and unfair competition.

As explained *infra*, Stadt's state-law causes of action are all either preempted, fail to state a claim on which relief may be granted, or both. The gist of Stadt's contract claim is his allegation the Fox breached the parties' agreement by its allegedly unauthorized use of the Madoff Video. This cause of action is preempted by Section 301 of the Copyright Act because (1) the Madoff Video falls squarely within the subject matter of the Copyright Act; (2) the only actionable breach Stadt alleges is an unauthorized use of the copyrighted material after the expiration of the license term; and (3) the Amended Complaint's add-on allegations concerning Fox's use of a "Fox Business Exclusive" credit fail to state a viable claim for the simple reason that Fox did not breach that provision of the parties' agreement. Under these circumstances, Section 301 of the Copyright Act preempts Stadt's breach of contract claim.

Implicitly acknowledging the infirmity of his contract claim, Stadt has now added causes of action for conversion, breach of fiduciary duty, unfair and deceptive trade practices, and misappropriation of "hot news." These claims, however, fare no better. First, Stadt's causes of action for unjust enrichment, unfair and deceptive trade practices and misappropriation are all preempted by the Copyright Act because, like his breach of contract claim, they are based on an allegedly unauthorized use of the copyrighted material. Second, and wholly independent of preemption, these causes of action, along with Stadt's claims for conversion and breach of fiduciary duty, fail to state claims on which relief can be granted.

Stadt's remedy, if any, is to be found in the Copyright Act. The second through seventh causes of action of the Amended Complaint should be dismissed.

### STATEMENT OF FACTS AND PROCEDURAL BACKGROUND[1]

Stadt contends that he is the sole and exclusive copyright owner of the Madoff Video, video footage of Bernie Madoff and his wife, which was allegedly filmed on a yacht and other locations in and around Saint-Tropez in 2003. Am. Compl. ¶¶ 6-7. Stadt has registered the Madoff Video with the United States Copyright Office. Am. Compl. ¶ 8.

On January 8, 2009, Stadt and Fox entered into a license agreement pursuant to which he granted Fox an exclusive license to use the Madoff Video on the "Fox News Channel" and the "Fox Business Network," as well as in advertising and promotion in association therewith (the "Agreement"). Am. Compl. ¶ 13; Declaration of Amanda Leith ("Leith Decl.") Ex. A, License

---

[1] The facts alleged in the Amended Complaint are false in several material respects. As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, however, Fox accepts the facts as alleged in the Amended Complaint as true solely for the purposes of this motion. Fox does not, however, accept any legal conclusions set forth in the Complaint as true.

Agreement ¶¶ 1-2.[2]  The exclusive license period initially ran until February 22, 2009, but was later extended until April 30, 2009, pursuant to an extension agreement dated March 24, 2009.  Am. Compl. ¶¶ 13, 21; Leith Decl. Ex. B, Extension Agreement.  The Agreement requires that, "[o]n all showings of the Tape or its contents, Fox News shall place an on screen credit that shall read 'Fox Business Exclusive.'"  Leith Decl.. Ex. A, License Agreement ¶ 13; Am. Compl. ¶ 16.

Stadt contends that Fox "continued to use the [Madoff Video] Master Tapes" subsequent to the April 30 expiration of the exclusive license period.  Am. Compl. ¶ 23.  Specifically, he alleges that, "[o]n or about May 17, 2009, after the expiration of the License Extension, Fox continued to use the Master Tapes and Video with the 'Fox Business Exclusive' credit," and that the Madoff Video was "downloaded from the Fox Business website."  Am. Compl. ¶¶ 23, 29.  According to Stadt, the continued use of the Madoff Video, along with the on-screen credit, constitutes a "material breach" of the Agreement.  Am. Compl. ¶¶ 24-25.  In addition, Stadt alleges that he "provided Fox with . . . Master Tapes,"[3] that Fox has "failed to return" those tapes, and that Fox "has used them in violation of the Parties' Agreements."  Am. Compl. ¶¶ 33-34.  Stadt does not allege that Fox failed to make any payment due under either the license agreement or the extension agreement.  Am. Compl. ¶¶ 13, 22.

On September 15, 2009, Stadt filed this action alleging two causes of action, for copyright infringement and breach of contract.  Fox accepted service of the Complaint on October 1, 2009.  On November 2, 2009, pursuant to the Court's Individual Practices, Fox

---

[2] "In ruling on a 12(b)(6) motion, a court may consider the complaint as well as 'any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference.'"  *Faulkner v. Arista Records*, 602 F. Supp. 2d 470, 477 (S.D.N.Y. 2009).

[3] While Fox accepts this allegation for purposes of its Motion to Dismiss, it has put Stadt on notice that the contention has no good faith basis in fact.

requested a pre-motion conference and indicated its intent to move to dismiss the breach of

contract claim on the ground that it is preempted by the Copyright Act.  The pre-motion

conference was ultimately scheduled for December 4, 2009 at 4:00 p.m.

On December 4, hours before the pre-motion conference, Stadt first informed Fox of his

intent to file an Amended Complaint, which was ultimately accepted for filing on December 7,

2009.  Implicitly acknowledging the infirmity of Stadt's breach of contract claim, the Amended

Complaint includes causes of action not only for copyright infringement and breach of contract,

but also for conversion, breach of fiduciary duty, unfair and deceptive trade practices, unjust

enrichment and unfair competition based on the alleged misappropriation of "hot news."  Stadt

now seeks an accounting, compensatory and punitive damages, and injunctive relief.

### PLAINTIFF'S STATE-LAW CAUSES OF ACTION ARE BOTH PREEMPTED BY THE COPYRIGHT ACT AND FAIL TO STATE A CLAIM

Fox respectfully moves to dismiss all of Stadt's state-law causes of action pursuant to

Rule 12(b)(6) of Federal Rules of Civil Procedure.[4]  First, the lion's share of Stadt's claims

simply seek alternative remedies under state law for Fox's allegedly unauthorized use of a

copyrighted video – rights equivalent to those protected under copyright.  Accordingly, these

causes of action are preempted by Section 301 of the Copyright Act, 17 U.S.C. § 301, and should

---

[4] A court should grant a motion to dismiss if, taking all the complaint's well-pleaded allegations as true, a plaintiff has failed to state a viable claim for relief.  *Faulkner*, 602 F. Supp. 2d at 477, 482.  In *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), the Supreme Court set forth "[t]wo working principles" that govern such motions.  First, the "[t]hreadbare recitals of the elements of a cause of action" in a complaint, "supported by mere conclusory statements, do not suffice" to state a viable claim.  *Id.* Second, a complaint can survive a motion to dismiss only if it "states a plausible claim for relief."  *Id.* at 1950.  "A claim has facial plausibility when the plaintiff *pleads factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 1949 (emphasis added); *see also Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (plaintiff must put forth sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level" in order to survive a motion to dismiss).

be dismissed.  Independent of preemption, Stadt's newly added claims for conversion, breach of fiduciary duty, deceptive trade practices and misappropriation of "hot" news all fail to state a claim for relief as a matter of law.

**A.    Stadt's Breach of Contract Claim Should Be Dismissed.**

**1.    The Copyright Act's Broad Preemptive Scope.**

State law is preempted when it operates in "a field of regulation which the [applicable federal] laws have reserved to Congress."  *Bonito Boats Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 167 (1989).  In enacting Section 301, Congress explicitly reserved the field of regulation governing claims relating to works of authorship that seek to vindicate rights equivalent to those provided by the law of copyright.  *See, e.g.*, *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989) (Copyright Act creates uniform law "by broadly pre-empting state statutory and common-law copyright regulation").  Section 301 states, in pertinent part:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by § 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, . . . are governed exclusively by this title. [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).

Copyright preemption applies whenever (1) "the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act," and (2) "the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law."  *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004).  A claim is preempted unless it includes an "extra element" that makes it "*qualitatively* different from a copyright infringement claim."  *Id.* at 305-06 (emphasis added).

The extra element must be something in addition "'to the acts of reproduction, performance, distribution or display.'" *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 851 (2d Cir. 1997) (citation omitted). "To determine whether a claim meets this standard, [the court] must determine 'what plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced.'" *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716-17 (2d Cir. 1992) (citations omitted). The Second Circuit has taken "a restrictive view of what extra elements transform an otherwise equivalent claim." *Briarpatch*, 373 F.3d at 306; *accord Nat'l Basketball Ass'n*, 105 F.3d at 851 (noting that Second Circuit precedent indicates "that the 'extra element' test should *not* be applied so as to allow state claims to survive preemption easily") (emphasis added).

Stadt's claim for breach of contract cannot survive preemption. First, the subject matter of this cause of action corresponds precisely with the subject matter of the Copyright Act – allegedly copyrighted video footage. Second, Stadt's asserts no viable claim for the breach of a contractual right that is qualitatively different from the exclusive rights protected under the Copyright Act.

## 2.     Stadt's Breach of Contract Claim Is Preempted.

The Second Circuit has yet to address copyright preemption specifically in the context of a breach of contract claim. *See Broadvision Inc. v. Gen. Elec. Co.*, No. 08 Civ. 1489, 2008 WL 4684114, at *4 (S.D.N.Y. Oct. 15, 2008) (Pauley, J.). This Court, however, has addressed the issue on several occasions and, although the case law is not wholly uniform, the weight of authority demonstrates that the Southern District employs a case-specific analysis, which considers "the nature of the promise at issue and whether it creates an extra element," rather than a mechanical *per se* rule. *Id.* (summarizing cases); *see also, e.g.*, *Gusler v. Fischer*, 580 F. Supp. 2d 309, 319 (S.D.N.Y. 2008) (Sweet, J.) (contract claim not preempted *where* "premised on the

existence of . . . allegations *beyond mere reproduction*") (emphasis added); *Price v. Fox Entm't Group, Inc.*, 473 F. Supp. 2d 446, 461 (S.D.N.Y. 2007) (Scheindlin, J.) (contract claim preempted where no extra element made claim "qualitatively different from a claim for co-authorship under the Copyright Act"); *Sharp v. Patterson*, No. 03 Civ. 8772, 2004 WL 2480426, at *7 (S.D.N.Y. Nov. 3, 2004) (Lynch, J.) ("Copyright Act preempts breach of contract claims that seek to vindicate the same rights as the Copyright Act affords, 'such as unauthorized reproduction, performance, distribution or display'") (quoting *Am. Movie Classics Co. v. Turner Entm't Co.*, 922 F. Supp. 926, 931 (S.D.N.Y. 1996) (Schwartz, J.)); *Tannenbaum v. Corbis Sygma*, No. 02 Civ. 5066, 2002 WL 31778813, at *3 (S.D.N.Y. Dec. 12, 2002) (Swain, J.) (contract claim preempted where "plaintiff has not pleaded any special rights, duties or restrictions that apply by reason of the contract"); *DeCarlo v. Archie Comic Publ'ns, Inc.*, 127 F. Supp. 2d 497, 509 n.64 (S.D.N.Y.) (Kaplan, J.) (contract claim that "fails to assert an 'extra element' outside those necessary for a claim of copyright ownership or infringement . . . 'can serve as a subterfuge to control nothing other than reproduction . . ., etc., of works within the subject matter of copyright'") (citation omitted), *aff'd*, 11 F. App'x 26 (2d Cir. 2001); *Wolff v. Inst. of Elec. & Elecs. Eng'rs, Inc.*, 768 F. Supp. 66, 69-70 (S.D.N.Y. 1991) (Haight, J.) (breach of contract claim preempted where alleged breach was infringement of copyright); *Brignoli v. Balch Hardy & Scheinman, Inc.*, 645 F. Supp. 1201, 1205 (S.D.N.Y. 1986) (Sweet, J.) ("claim that a defendant made unauthorized use of copyrightable material falls squarely within § 301 and thus is preempted"); *Smith v. Weinstein*, 578 F. Supp. 1297, 1307 (S.D.N.Y.) (Sofaer, J.) (to extent contract claim rests on defendant "having copied" plaintiff's property, "it is of course preempted"), *aff'd*, 738 F.2d 419 (2d Cir. 1984).[5]

---

[5] *But see Architectronics, Inc. v. Control Sys., Inc.*, 935 F. Supp. 425, 441 (S.D.N.Y.

*Continued on following page* . . . .

Thus, for example, in *American Movie Classics Co. v. Turner Entertainment Co.*, plaintiff sued for the breach of a licensing agreement under which defendant had granted plaintiff the exclusive right to exhibit certain motion pictures. 922 F. Supp. at 928-30. Plaintiff contended that defendant had breached the agreement by exhibiting the films on defendant's own channels. *Id.* In dismissing the breach of contract claim, Judge Schwartz confirmed that such a cause of action "is preempted if it is merely based on allegations that the defendant did something that the copyright laws reserve exclusively to the plaintiff (such as unauthorized reproduction, performance, distribution or display)." *Id.* at 931; *see also, e.g.*, *Broadvision Inc.*, 2008 WL 4684114, at *4 (finding contract cause of action based on claim that defendant breached the parties' license agreement by making copies and using work "in excess" of licensed rights was preempted, and explaining that plaintiff's claim "is qualitatively the same as a copyright infringement claim; it does not allege that [defendant] breached a promise to pay, to allow an audit, or any other promise"); *CBS Broad. Inc. v. Counterr Group*, No. 05 Civ. 7946, slip op. at 24 (S.D.N.Y. Aug. 26, 2008) (Batts, J.) (copy attached to Leith Declaration) (holding contract claim preempted where the "gravamen" of the claim was "illegal loaning and distribution" and there was "no allegation that [defendant] breached any provisions of the licensing agreement other tha[n] those providing it the right to broadcast the video footage in the manner and during the window of time specified in the agreement"); *Cooper v. Sony Records Int'l*, No. 00 Civ. 233, 2001 WL 1223492, at *5 (S.D.N.Y. Oct. 15, 2001) (Berman, J.) (holding

---

*Continued from previous page . . . .*

1996) (Mukasey, J.) (suggesting "breach of contract claims are qualitatively different from claims for copyright infringement"); *Logicom Inclusive, Inc. v. W.P. Stewart & Co.*, No. 04 Civ. 0604, 2004 WL 1781009, at *18 (S.D.N.Y. Aug. 10, 2004) (Haight, J.) ("'the extra element that saves a contract claim from preemption is the promise itself'") (quoting *Architectronics*); *Torah Soft Ltd v. Drosnin*, 224 F. Supp. 2d 704, 717 (S.D.N.Y. 2002) (Francis, J.) (same).

contract claim preempted where the "basis for [the] claim is that [defendant] 'wrongfully commercially exploit[ed]'" the material at issue, "the very essence of its Copyright Act claim") (citation omitted).

An examination of Stadt's breach of contract cause of action leads to the same conclusion. First, Stadt's contract claim relates to a type of work, specifically a motion picture, that falls within the protection of the Copyright Act. *See* 17 U.S.C. § 102(a)(6). Second, with one possible exception addressed *infra*, the cause of action purports to assert rights equivalent to those set forth in Section 106 of the Copyright Act, specifically the rights to reproduce and distribute the Madoff Video. In short, Stadt's breach of contract claim is based squarely on his allegation that Fox used portions of the Madoff Video without his authorization. He therefore seeks remedies for "an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law." *Briarpatch Ltd.*, 373 F.3d at 305.

In his Amended Complaint, Stadt attempts to plead around this reality and to manufacture the requisite "extra element" by alleging that "[t]he continued use of the 'Fox Business Exclusive' credit on the [Madoff] Video" also "constitutes a material breach of the Parties' Agreement." Am. Compl. ¶ 25. This allegation, however, cannot be squared with the plain language of the parties' Agreement. On its face, the Agreement imposes an affirmative *obligation* on Fox to use such a credit "[o]n all showings of the Tape or its contents." Leith Decl. Ex. A, Agreement ¶ 13 ("On *all* showings of the Tape or its contents, Fox News *shall* place an on screen credit that shall read 'Fox Business Exclusive.'") (emphasis added).[6] It does

---

[6] "[T]he word, 'shall,' ordinarily connotes a command" or mandatory obligation. *See, e.g.*, *In re Adirondack Ry. Corp.*, Nos. 89-cv-1489, 90-cv-0050, 1990 WL 124225, at *1 (N.D.N.Y. Aug. 23, 1990) (citing *Escoe v. Zerbst*, 295 U.S. 490, 493 (1935)). In this case, Stadt

*Continued on following page . . . .*

not provide Fox with a bargained-for right or option to use such a credit, nor does it purport to limit Fox's obligation to include the credit. In addition, the Amended Complaint expressly alleges that the "Fox Business Exclusive" credit was in fact used every time the Madoff Video was shown – precisely what Fox was obliged to do under the Agreement. *See, e.g.*, Am. Compl. ¶¶ 18, 23, 25-30. Thus, Fox did not breach the Agreement through its alleged use of the credit. Stadt's only remaining allegations of breach – *i.e.,* that Fox allegedly continued to use the Madoff Video (with or without the credit) after the expiration of the Agreement – is preempted by the Copyright Act.

### 3.    The Cases Upon Which Plaintiff Relies Do Not Compel A Different Conclusion

In his November 3, 2009 letter to the Court, Stadt contended that

> in *eScholar, LLC v. Otis Educational Sys., Inc.*, 387 F. Supp. 2d 329 (S.D.N.Y. 2005), adhering to the holding of Judge Mukasey in *Architectronics, Inc. v. Control Sys.*, 935 F. Supp. 425, 438 (S.D.N.Y. 1996), Judge Robinson held that protection from breach of contract is not equivalent to copyright protection because a contract claim requires an extra element that renders the claim qualitatively different from a claim for copyright infringement: a promise by the defendant.

*See* Leith Decl. Ex. C, Nov. 3, 2009 Hubell Letter at 2. According to Stadt's interpretation of *eScholar* and *Architectronics*, therefore, this Court has adopted a blanket rule that a breach of contract claim is *always* qualitatively different than a claim for copyright infringement – based merely upon a promise between the parties – and can never be preempted. *Id.* at 1-2. This analysis is incorrect, for a number of reasons.

---

*Continued from previous page . . . .*

imposed this obligation on Fox because it permitted him to track and identify unauthorized uses of the Madoff Video by other media entities.

First, Stadt misreads *eScholar*.  In that case, the defendant's motion to dismiss a breach of contract claim under Section 301 of the Copyright Act was in fact "*granted* to the extent it seeks to enforce Plaintiff's exclusive right to reproduce and distribute its work."  387 F. Supp. 2d at 332 (emphasis added).  The plaintiff's contract claim survived *only* to the extent "it seeks to enforce contractual rights to audit books and receive royalty fees," *i.e.*, contract rights *not* equivalent to those provided under the Copyright Act.  *Id.* at 333.

Second, the statement made by Judge Mukasey on which Stadt relies – *i.e.*, that "the 'extra element' that saves a contract claim from preemption is the promise itself," *Architectronics*, 935 F. Supp. at 439 – was *dicta*, unnecessary to the holding in the case.  The specific provisions that plaintiff alleged were breached by the defendant in *Architectronics* were a promise of confidentiality and an agreement to pay a royalty.  *Id.* at 429-30, 438-41.  Accordingly, the contract claim that Judge Mukasey addressed involved rights *beyond* those secured by federal copyright law, rights not subject to preemption.

Finally, to the extent *Architectronic* can be read to adopt a categorical rule against preemption of contract claims, it is contrary to controlling Second Circuit authority, *see, e.g.*, *Briarpatch Ltd.*, 373 F.3d at 305 (where "claim seeks to vindicate legal or equitable rights . . . equivalent to one of the bundle of exclusive rights already protected by copyright law," it is preempted); *Nat'l Basketball Ass'n*, 105 F.3d at 850 (extra element must be something in addition "'to the acts of reproduction, performance, distribution or display.'") (citation omitted), and it has therefore generally not been followed by courts in this District, *see* p. 6-9 *supra* (citing cases).[7]  Moreover, the ostensible rationale for such a rule (*i.e.*, that the rights created by a two-

---

[7] Indeed, if an allegation of a "promise by the defendant" alone was enough to avoid preemption, no contract claim would ever be preempted – clearly this is not the case.  *See, e.g.*,

*Continued on following page . . . .*

party contract can never be the equivalent of any of the exclusive rights granted by the Copyright Act), has been strongly criticized.  *See* 1 David Nimmer, *Nimmer on Copyright* § 1.01(B)(1)(a) (iii) ("rule" against preempting contract claims is not categorical; "pre-emption should continue to strike down claims that, though denominated 'contract,' nonetheless complain directly about the reproduction of expressive materials"); *id.* § 3.04(B)(3)(a) (observing that such reasoning "hardly demonstrates the far greater proposition that every contract relating to copyrightable goods is therefore nonpre-empted"); *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 457 (6th Cir. 2001) ("Under that rationale, a contract which consisted only of a promise not to reproduce the copyrighted work would survive preemption even though it was limited to one of the exclusive rights enumerated in 17 U.S.C. § 106").

Indeed, while the Second Circuit has "not [yet] addressed whether the promise inherent in every contract is sufficient to establish an 'extra element,'" *Broadvision Inc.*, 2008 WL 4684114, at *4, virtually every other Circuit that has addressed the issue has declined to adopt a blanket rule that all contract claims are immune from preemption – choosing instead, as have the majority of courts in this District, to consider the specific nature of the promise at issue and whether it creates the requisite extra element.  *See, e.g.*, *Wrench LLC*, 256 F.3d at 457 ("we do not embrace the proposition that all state law contract claims survive preemption simply because they involve the additional element of a promise"); *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 432, 434 n.6 (8th Cir. 1993) (examining contract provision at issue to determine whether it protected rights equivalent to copyright and declining to "decide whether a breach of contract claim based on a wrongful exercise of one of the exclusive

---

*Continued from previous page . . . .*

*Broadvision Inc.*, 2008 WL 4684114, at *4; *CBS Broad. Inc.*, No. 05 Civ. 7946, slip op. at 24, 25; *Price*, 473 F. Supp. 2d at 460-61; *Cooper*, 2001 WL 1223492, at *5.

copyright rights is preempted"); *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990) (reviewing contract that "forbade [the plaintiff] from representing a competing company prior to termination" and holding that "[t]he right to claim *this* breach of contract is not preempted by the copyright law" because it "involves an element in addition to mere reproduction, distribution, or display") (emphasis added); *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988) (holding breach of contract claim not preempted based on fact-specific analysis of contract, which obligated defendant either to purchase plans at issue or to purchase his building materials from plaintiff);[8] *see also Richie v. Williams*, 395 F.3d 283, 287, 288 & n.3 (6th Cir. 2005) (collecting cases and academic commentary discussing preemption of contract claims and finding preemption where breach of contract claim was "'equivalent' to infringement claim"). *But see Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1318-19 (11th Cir. 2001). Even *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir.1996), upon which both the *Architectronics* opinion and Stadt rely, declined to find that *all* breach of contract actions escape preemption. *See id.* at 1455 ("we think it prudent to refrain from adopting a rule that anything with the label 'contract' is necessarily outside the preemption clause").

In this case, Stadt asserts that Fox allegedly "breached the [License Agreement] by its continued use of the [Madoff] Video." Am. Compl. ¶ 30. And, although he alludes to "an

---

[8] Plaintiff relies on several of these cases, but neglects to acknowledge the importance (and dissimilarities) of the underlying facts in contrast to those he alleges here. *Cf. Lennon v. Seaman*, 63 F. Supp. 2d 428, 437-38 (S.D.N.Y. 1999) (observing that "[w]hile many courts have held certain copyright claims not to be preempted by federal law, *it is important to note* that not all of these holdings are based on the same principles") (emphasis added). The other authorities to which plaintiff has directed the Court are equally distinguishable. Neither *Willis v. Home Box Office*, 57 F. App'x. 902 (2d Cir. 2003), nor *Orange County Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541 (S.D.N.Y. 2007), address the issue of whether a breach of contract claim is preempted because each court found that the plaintiff had failed to allege essential elements of the underlying cause of action.

explicit promise to pay" him for the "exclusive right to use the tape," (*see* Leith Decl. Ex. C Nov. 3, 2009 Hubell Letter at 2), Stadt does not allege any breach of a right to a royalty payment or other compensation term.  Nor does he allege any other actionable conduct by Fox, such as a breach of a duty to allow for auditing or breach of a duty of confidentiality.  Accordingly, because the only contract term credibly placed at issue is an alleged promise not to reproduce or use copyrighted works without further authorization, the cause of action is preempted.  *See, e.g., Sharp*, 2004 WL 2480426, at *7 ("state law claims that are substantively redundant of Copyright Act claims are preempted").

**B.    Stadt's Remaining State-Law Claims Similarly Should Be Dismissed**

In his Amended Complaint, Stadt alleges a host of new causes of action.  These claims, however, largely restate the allegations underlying his causes of action for copyright infringement and breach of contract and are, for that reason, preempted.  Beyond preemption, it is well established that "[a] party's breach of contract cannot form the basis for a tort claim 'unless a legal duty independent of the contract itself has been violated.'"  *Calcutti v. SBU., Inc.*, 223 F. Supp. 2d 517, 521 (S.D.N.Y. 2002) (citation omitted).  In this case, the Amended Complaint does not state any facts sufficient to establish the requisite independent legal duty.  Accordingly, Stadt's additional state-law causes of action should be dismissed for failure to state a *prima facie* claim, because they are preempted or, in several instances, both.

**1.    Stadt Fails To State A Claim For Conversion**

"'Conversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property.'"  *Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 53 (2d Cir. 1993) (citation omitted).  However, "'[w]here the original possession is lawful, a conversion does not occur until the defendant refuses to return the property after demand.'"  *Id.*

at 54 (citation omitted).  In addition, "New York law is clear in barring claims for conversion where damages are merely sought for breach of contract." *Briarpatch Ltd. v. Geisler Roberdeau, Inc.*, 148 F. Supp. 2d 321, 328 (S.D.N.Y. 2001); *see also Calcutti*, 223 F. Supp. 2d at 523 ("plaintiff must allege acts that are unlawful or wrongful, rather than mere violations of contractual rights, to state a claim for conversion"); *Fesseha v. TD Waterhouse Investor Servs., Inc.*, 305 A.D.2d 268, 269 (1st Dep't 2003) (conversion claim "predicated on a mere breach of contract" properly dismissed).

In this case, even accepting the false allegation that Stadt gave Fox a tangible "Master Tape" by Stadt,[9]  Fox's possession of it was authorized by the License Agreement.  Stadt does not allege, nor could he, that he ever made a demand for the return of the purported "Master Tape" or that Fox refused such a demand.  Moreover, the Agreement makes no mention of any "Master Tape," much less obligates Fox to return it to Stadt.  Leith Decl. Ex. A, Agreement. Thus, the allegation that Fox retained a copy does not support a claim for conversion as a matter of law.  Simply put, since Fox had "rightful control" over the Master Tape pursuant to the License Agreement, and there is no allegation that Stadt ever demanded its return, his claim for conversion should be dismissed.  *See Schwartz*, 984 F.2d at 54 (plaintiff cannot establish conversion under New York law, where defendants had rightful control over plaintiff's property by virtue of contract between them, and there was no evidence that plaintiff ever demanded its return).

---

[9] Fox never had possession of a "Master Tape."  Even if it had, however, Stadt's contention that Fox has wrongfully exercised dominion or control over the intellectual property contained within the Madoff Video is plainly preempted.  *See, e.g., Price*, 473 F. Supp. 2d at 460-61 (claim for conversion based on defendant's alleged failure to credit plaintiff as co-author of screenplay and account to him for profits preempted).

2.      **Stadt Cannot State A Claim For Breach of Fiduciary Duty**

"A claim for breach of fiduciary duty under New York law requires the existence of a fiduciary duty and a breach of that duty." *Faulkner*, 602 F. Supp. 2d at 482.  "[I]t is well-settled law that, 'a conventional business relationship does not create a fiduciary relationship in the absence of additional factors.'"  *Id.* (citation omitted); *see also Holloway v. King*, 361 F. Supp. 2d 351, 360 (S.D.N.Y. 2005) ("'[a] conventional business relationship, without more, does not become a fiduciary relationship by mere allegation'") (quoting *Oursler v. Women's Interart Ctr., Inc.*, 170 A.D.2d 407, 408 (1st Dep't 1991)), *aff'd*, 161 F. App'x 122 (2d Cir. 2005); *Kopel v. Bandwidth Tech. Corp.*, 56 A.D.3d 320, 320 (1st Dep't 2008) (No fiduciary relationship exists between parties to "'a simple business transaction'") (quoting *Elliott v. Qwest Commc'ns Corp.*, 25 A.D.3d 897, 898 (3d Dep't 2006)).  "'[A]n arm's length business transaction, even those where one party has superior bargaining power, is not enough to give rise to a fiduciary relationship.'"  *Faulkner*, 602 F. Supp. 2d at 482 (citation omitted).

In *Atlantis Information Technology, GmbH v. CA, Inc.*, 485 F. Supp. 2d 224 (E.D.N.Y. 2007), for example, plaintiff licensor alleged that its licensee breached both the license agreement and its fiduciary duty.  Plaintiff contended that it had "entrust[ed]" its copyrighted products to defendant, and "that, as a result" of that trust, defendant owed plaintiff a fiduciary duty.  *Id.* at 228.  The court disagreed, holding that, "'[w]hen parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances.'"  *Id.* at 231 (citation omitted).  The court further explained that "'[i]t is thus clear that a conventional business relationship, without more, does not become a fiduciary relationship by mere allegation.'"  *Id.* (citation omitted).  Where plaintiff does not allege any *facts* upon which the court may infer "'that the trust and confidence [plaintiff] reposed in [defendant] was anything more than the type

16

parties normally seek before entering an arms-length transaction, [or] . . . that the transaction was not made at arms length,'" the claim properly is dismissed.  *Id.* at 232 (citation omitted).[10]

In this case, the Amended Complaint alleges, in a wholly conclusory fashion, that "Fox and Stadt entered a confidential relationship" and that "Stadt was vulnerable and dependent." Am. Compl. ¶¶ 39, 42.  According to the Amended Complaint, Fox thus "owed Stadt a fiduciary duty not to use the otherwise unavailable Madoff Video in violation of the Parties' Agreements." Am. Compl. ¶ 44.  What the Amended Complaint describes, however, is nothing more than a standard licensing agreement.  Am. Compl. ¶¶ 13, 40-41, 43.  Stadt's conclusory allegation that a "confidential relationship" was created is insufficient to state a claim for breach of fiduciary duty as a matter of law.  *Faulkner*, 602 F. Supp. 2d at 482 ("conclusory allegations" that the parties shared a relationship of "'trust and confidence' . . . are insufficient to plead a fiduciary relationship and survive a motion to dismiss"); *Holloway*, 361 F. Supp. 2d at 361 ("conclusory allegations of a 'special relationship' [or] 'complete trust and confidence' . . . [do] not transform an ordinary commercial relationship into a fiduciary relationship").[11]

### 3.    Plaintiff's Claim For Unfair Competition Is Both Preempted And Fails To State A Claim

Like his claim for breach of contract, Stadt's cause of action for unfair and deceptive trade practices in violation of Section 349 of the New York General Business Law is preempted

---

[10] Not only does the Amended Complaint fail to allege facts from which this Court could infer the requisite "trust and confidence," it fails to disclose that, throughout his dealings with Fox, Stadt was represented by counsel, who in fact negotiated the Agreement on his behalf.

[11] Moreover, even if Stadt could establish a basis for a fiduciary relationship, his "breach of fiduciary duty claim [is] properly dismissed on the alternative ground that it is duplicative of the breach of contract claim."  *Fesseha*, 305 A.D.2d at 269; *see also Brooks v. Key Trust Co. Nat'l Ass'n*, 26 A.D.3d 628, 630 (3d Dep't 2006); *Atlantis Information Technology, GmbH*, 485 F. Supp. 2d at 232.

by the Copyright Act.  The claim rests entirely on Stadt's contention that use of the phrase "Fox Business Exclusive" in concert with the Madoff Video constituted a violation of the statute.  Am. Compl. ¶¶ 49-50.  However, where "unfair competition claims are based on the very acts of producing and broadcasting allegedly infringing works that form the factual underpinning of [plaintiff's] copyright claims," they are preempted.  *Freeplay Music, Inc. v. Cox Radio, Inc.*, 409 F. Supp. 2d 259, 263-264 (S.D.N.Y. 2005); *see also Hudson v. Universal Pictures Corp.*, 70 U.S.P.Q.2d 1727, 1731-32, 2004 WL 1205762 (E.D.N.Y. Apr. 29, 2004), *aff'd sub nom. Hudson v. Imagine Entm't Corp.*, 128 F. App'x. 178, 179 (2d Cir. 2005) (plaintiff's claim for unfair competition based on defendant's use of copyright script properly dismissed as preempted).  In addition, an "allegation that [defendant] also misrepresented [the work] as its own does not transform the claim into one qualitatively different from a copyright claim."  *Silverstein v. Penguin Putnam, Inc.*, 522 F. Supp. 2d 579, 609 (S.D.N.Y. 2007) (finding cause of action preempted because "passing off" is not a necessary element of an unfair competition claim); *see also Kregos v. Associated Press*, 3 F.3d 656, 665-66 (2d Cir. 1993) (finding unfair competition claim preempted because it did not require "extra element").

Independent of preemption, Stadt fails to state a claim for relief under Section 349.  To establish a *prima facie* case of deceptive trade practices under Section 349, a plaintiff must allege that "(1) the defendant's deceptive acts were directed *at consumers*, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d. Cir. 2000) (emphasis added). "[A] 'private contract dispute, unique to the parties,' which [does] not amount to conduct affecting the consuming public at large and which is outside the ambit of this statute" does not provide the basis for a Section 349 claim.  *Brooks*, 26 A.D.3d at 631 (citation omitted).  Rather, when a party asserts a Section 349 claim, "'the

gravamen of the complaint must be consumer injury or harm to the public interest.'" *Gucci Am., Inc. v. Duty Free Apparel, Ltd.,* 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003) (quoting *Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F. Supp. 1084, 1089 (S.D.N.Y. 1988)); *see also GuideOne Specialty Mutual Ins. Co. v. Congregation Bais Yisroel*, 381 F. Supp. 2d 267, 282 (S.D.N.Y. 2005) ("[c]laims under § 349 must relate to 'consumer-oriented' conduct that has a broad impact [on consumers at large], and is generally inapplicable to private . . . disputes"); *Teller v. Bill Hayes, Ltd.* 213 A.D.2d 141, 145 (2d Dep't 1995) (same).

In *Gucci America, Inc.*, this Court specifically addressed this issue, recognizing that "[c]laims that arise out of a trademark infringement action, and disputes between competitors where the core of the claim is harm to another business as opposed to consumers, both constitute situations which courts have found to reflect a public harm that is too insubstantial to satisfy the pleading requirements of § 349." 277 F. Supp. 2d at 273. The Court distinguished plaintiff's allegations from "cases in which a cause of action under § 349 was sustained," such as where defendants were involved in providing false information related to products the nature of which "'clearly would involve a [sufficient] public harm.'" *Id.* at 274 (citation omitted). Accordingly, the Court held that, "[w]here the gravamen of the complaint is harm to a business as opposed to the public at large, the business does not have a cognizable cause of action under § 349." *Id.*; *see also Winner Int'l v. Kryptonite Corp.*, No. 95 Civ. 247, 1996 WL 84476, at *3 (S.D.N.Y. Feb. 27, 1996) ("Courts routinely reject such attempts to fashion Section 349 . . . claims from garden variety disputes between competitors").

In this case, the Amended Complaint alleges only that "Fox fraudulently and falsely represented to and mislead the public and others that the Video was a 'Fox Business Exclusive.'" Am. Compl. ¶ 49. It fails to allege any facts to support a contention that Fox's conduct imposed

"harm [on] the public at large," nor does it assert any facts suggesting that Fox "engaged in fraudulent activity that is consumer oriented." *Gucci America, Inc.,* 277 F. Supp. 2d at 272, 274. Indeed, Stadt fails to assert any claim of injury or harm inflicted on the public as a result of Fox's alleged conduct.  Thus, Stadt has failed to state a cognizable cause of action under Section 349.

### 4.    <u>Plaintiff's Claim For Unjust Enrichment Is Preempted</u>

Claims for unjust enrichment arising from the alleged misuse of copyrighted works are preempted pursuant to Section 301 of the Copyright Act.  *See, e.g.*, *Lennon*, 63 F. Supp. 2d at 436 ("[T]he gravamen of the plaintiff's unjust enrichment claim is unauthorized publication, and . . . does not involve rights 'different in kind' from those protected by federal copyright law."); *Boyle v. Stephens, Inc.*, No. 97 Civ. 1351, 1998 WL 690816, at *6 (S.D.N.Y. Sept. 29, 1998) (same), *aff'd*, 21 F. App'x 76 (2d Cir. 2001).  As this Court held in *Atrium Group de Ediciones y Publicaciones, S.L. v. Harry N. Abrams, Inc.* 565 F. Supp. 2d 505 (S.D.N.Y. 2008):

> [t]he allegation that Plaintiffs failed to receive 'any advance payment, royalties, [or] remuneration of any kind whatsoever' from Defendants does not transform their copyright infringement claim into an unjust enrichment claim. If the law were otherwise, every time [a] copyright infringer obtained any profit from his infringing activity, the copyright owner would be able to assert a state claim for unjust enrichment. That would undermine §301 preemption.

*Id.* at 509; *see also Gusler*, 580 F. Supp. 2d at 316-17 ("although enrichment is not an element of a copyright infringement claim, it does not constitute an 'extra element' for the purposes of preemption analysis") (citing *Briarpatch Ltd., L.P.* 373 F.3d at 306); 1 David Nimmer, *Nimmer on Copyright* § 1.01(B)(1)(g) ("[A] state law cause of action for unjust enrichment or quasi contract should be regarded as an 'equivalent right' and hence, pre-empted insofar as it applies to copyright subject matter.").

In this case, Stadt claims that Fox was "unjustly enriched" because it "used the Master Tapes and Video after the expiration of the term of the License."  Am. Compl. ¶¶ 54-55, 58. Because this claim seeks to protect the same rights in the Madoff Video as those protected by the Copyright Act, it is preempted.

## 5.    <u>Stadt Fails To State A Claim For Misappropriation of "Hot" News</u> [12]

The Second Circuit has recognized that most state law claims for misappropriation do not survive copyright preemption.  *See, e.g., Nat'l Basketball Ass'n*, 105 F.3d at 852; *Fin. Info., Inc. v. Moody's Investors Serv., Inc.*, 808 F.2d 204, 208 (2d Cir. 1986) ("'state law claims that rely on the misappropriation branch of unfair competition are preempted'") (quoting *Warner Bros., Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 247 (2d Cir. 1983)).  "[O]nly a narrow 'hot news' misappropriation claim survives preemption for actions concerning material within the realm of copyright."  *Nat'l Basketball Ass'n*, 105 F.3d at 852.  Thus, to survive preemption, Stadt's "hot news" claim must fit within this limited exception.

The "elements central" to a "hot" news misappropriation claim are: (1) "the plaintiff generates or collects information at some cost or expense;" (2) "the value of the information is highly time-sensitive;" (3) "the defendant's use of the information constitutes free-riding on the plaintiff's costly efforts to generate or collect it;" (4) "the defendant's use of the information is in direct competition with a product or service offered by the plaintiff;" and (5) "the ability of other

---

[12] Although the Amended Complaint terms this claim "unfair competition at common law," by his specific reference to "hot news," Stadt presumably attempts to assert a cause of action arising under the branch of the unfair competition tort known as "hot news" misappropriation, which was first enunciated by the Supreme Court in *Int'l News Serv. v. Associated Press*, 248 U.S. 235 (1918), and addressed by the Second Circuit in *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997).

parties to free-ride on the efforts of the plaintiff would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened." *Id.*

Stadt does not even attempt to allege these requisite elements. Rather, he makes only the conclusory allegation that, "[a]t the time Fox used the Video with the 'Fox Business Exclusive' credit, the Video constituted 'hot news'," and that the alleged "improper and illegal use by Fox of the Video" therefore "constitutes unfair competition." Am. Compl. ¶¶ 61-62. In addition, even putting aside Stadt's failure to allege the requisite elements, his own allegations preclude a cognizable claim for "hot" news misappropriation. "The 'hot' news doctrine is concerned with the copying and publication of information gathered by another before he has been able to utilize his competitive edge." *Fin. Info., Inc*, 808 F.2d at 209. At best, the Amended Complaint alleges that Fox used the Madoff Video without authorization *four months* after Stadt first offered it for license. Am. Compl. ¶¶ 13, 23. This length of time rules out any claim that Fox misappropriated "hot" news because Stadt does not (and cannot) allege "the immediacy of distribution necessary to sustain a 'hot' news claim." *Fin. Info., Inc*, 808 F.2d at 209 (finding allegation that defendant copied plaintiff's news that was "at least ten days old" failed to state a claim).

**CONCLUSION**

For the foregoing reasons, the second through seventh causes of action of the Amended

Complaint should be dismissed with prejudice.

Dated: January 8, 2010
      New York, New York

                                        Respectfully submitted,

                                        LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

                                        By:   /s/ Amanda M. Leith
                                                Lee Levine
                                                Christopher P. Beall
                                                    Amanda M. Leith

                                          321 West 44th Street, Suite 510
                                        New York, NY 10036
                                        (212) 850-6100

                                          *Attorneys for Defendant*
                                        *Fox News Network, L.L.C.*